## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER FOR FIRST
NATIONAL BANK OF NEVADA, SUCCESSOR-
IN-INTEREST TO FIRST NATIONAL BANK
OF ARIZONA,

      Plaintiff,

vs.

JASON HALPERN, *et al.*,

      Defendants.

Case No. 2:08-cv-01571-PMP-GWF

**ORDER**

**Motion to Compel Discovery - #93**

This matter is before the Court on Defendants' Motion to Compel Discovery (##93, 94), filed on August 13, 2010; Plaintiff's Response to Defendants' Motion to Compel (#97), filed on August 30, 2010; and Defendants' Reply in Support of Motion to Compel (#100), filed on September 14, 2010. The Court conducted a hearing in this matter on September 28, 2010.

## BACKGROUND

The Plaintiff, Federal Deposit Insurance Corporation ("FDIC") is the receiver of First National Bank of Nevada, which is the successor in interest to the First National Bank of Arizona. On or about March 22, 2006, the First National Bank of Arizona ("Bank") loaned Lake Elsinore 521, LLC ("Lake Elsinore") $18,400,000 in exchange for a promissory note that was due and payable in full, with interest, on March 21, 2007. The maturity date of the note was subsequently extended to September 17, 2007. The promissory note was secured by a deed of trust on real property located in Riverside County, California. The Defendants allegedly executed commercial guaranties to the Bank which guaranteed full payment of Lake Elsinore's indebtedness to the Bank.

. . .

Lake Elsinore failed to make the payment due on September 17, 2007. As of May 16, 2008, the total amount due on the promissory note, including principal, interest, late charges, other incidental charges and attorneys fees and costs was $19,126,317.25. On May 16, 2008, the Bank was the successful bidder at the foreclosure sale of the secured real property. The Bank's bid was $10 million. Based on an April 21, 2008 appraisal report, the FDIC alleges that the fair market value of the real property on the date of foreclosure was $12,100,000. This left an alleged deficiency balance of $7,026,317.25, which continues to accrue interest, charges, fees and costs. Plaintiff FDIC seeks to recover these amounts from the Defendants. *See Supplemental Complaint (#29)*.

## DISCUSSION

Defendants move for an order compelling the FDIC to provide further responses to requests for admissions, requests for production of documents and interrogatories. Because the FDIC, in its capacity as receiver, is asserting the Bank's underlying claim for a deficiency judgment, the Defendants argue that it is obligated to respond to discovery to the same extent that the Bank would be required to respond. One of the issues before the Court is the extent to which the FDIC is required to make "reasonable inquiry" in responding to Defendants' discovery requests.

A party is generally charged with knowledge of what its agents know, or what is in records available to it, or even information others have given to it on which it intends to rely in its suit. A party cannot limit its interrogatory answers to matters within its own knowledge and ignore information immediately available to it or under its control. 8B Wright, Miller & Marcus, Federal Practice and Procedure §2177 (3rd Ed. 2010) citing *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 140 (W.D.Okla. 1977). *See also Walls v. Paulson*, 250 F.R.D. 48, 50 (D.D.C. 2008); *Essex Builders Group, Inc. v. Amerisure Ins.Co.*, 230 F.R.D. 682, 685 (M.D.Fla. 2005); and *General Cigar Co., Inc. v. Cohiba Caribean's Finest, Inc.*, 2007 WL 983855 (D.Nev. 2007) *3. In *Essex Builders*, the plaintiff insurer, who was suing as the assignee of its insured, stated in its answers to interrogatories that the insured's personnel possessed the requested information and that the insurer was therefore unable to respond. The court held that merely because the requested information was not possessed by the insurer, did not mean that the information was unavailable to it, especially

given that it was an assignee of the owner's interests. The insurer was required to make reasonable efforts to obtain relevant documents or interview the owner's personnel in responding to the interrogatories. If the owner refused or failed to make its personnel available, then the plaintiff insurer was required to set forth in its supplemental responses the efforts it made to obtain responsive information.

A party must produce nonprivileged relevant documents in response to a request for production that are in the producing party's possession, custody or control. Fed.R.Civ.Pro. 34(a)(1). "'Federal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand.'" 8B Wright, Miller & Marcus, Federal Practice and Procedure §2177 (3rd Ed. 2010). *See also Walls v. Paulson*, 250 F.R.D. at 50, citing *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995).

A party's duty of reasonable inquiry in responding to requests for admissions is similar to its duty in answering interrogatories. Fed.R.Civ.Pro. 36(a)(1) states that a party may serve on any other party a written request to admit the truth of any matter within the scope of Rule 26(1) relating to: (A) facts, the application of law to fact, or opinions about either and (B) the genuineness of any described documents. Subsection (a)(4) states that if the matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter. When good faith requires a party to qualify its answer or deny only a part of the requested matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

In *Asea, Inc. v. Southern Pacific Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981), the court stated in regard to the reasonable inquiry requirement:

> Thus, Rule 36 requires the responding party to make a reasonable inquiry, a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's

> relative control and to state fully those efforts. Such reasonable inquiry includes an investigation and inquiry of employees, agents, and others, "who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response." The inquiry may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties.... The operative words then are "reasonable" and "due diligence."

See also *A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250, 254 (C.D.Cal. 2006) and *In re Gulf Oil/Cities Services Tender Offer Litig.*, 1990 WL 657537 (S.D.N.Y. 1990) *2.

*SEC v. Thrasher*, 1996 WL 507318 (S.D.N.Y. 1996) *3 states that "[w]hen imposing an obligation on the responding party to seek out information in order to answer a request, the courts have generally acted only in circumstances in which the responding party has the means independently to ascertain the truth. Thus, if the information is held by the responding party or by an individual or entity with which the responding party maintains a relationship that enables it readily to procure the required information, then that party may be expected to seek out the information and respond substantively to the request for admission." In support of this statement, the court cited *Caruso v. The Coleman Co.*, 1995 WL 347003, at *5 (E.D. Pa. 1995) in which the defendant was required to respond to admissions based on the knowledge of its own employee who had been deposed in the action.

In *Dubin v. E.F. Hutton Group, Inc.*, 125 F.R.D. 372 (S.D.N.Y. 1989), however, the court held that the defendant did not have the duty to interview a former employee in order to respond to the requests for admission relating to communications between the plaintiff and the former employee. The court found that the requests related to matters solely within the personal knowledge of the former employee, whose recollections, if any, would not be binding on the defendant. In *Diederich v. Dept. of the Army*, 132 F.R.D. 614, 620 (S.D.N.Y 1990), the court doubted whether the defendant lacked the knowledge required to admit or deny the requests for admission. It stated, however, "[t]hat if such is the case, then defendant should so specify, rather than merely express a conclusory assertion that the request seeks information only within the knowledge of nonparties." The court further stated that "[t]o the extent that information, within the exclusive knowledge of nonparties, is required in order to comply with a request, defendant need

4

not interview that person if they are no longer employed by or otherwise connected with the Army." The court stated, however, that the defendant could be required to interview individuals within its control who have relevant knowledge, such as reservists who are still subject in some measure to defendant's command.

In this case, the FDIC was appointed receiver upon the Bank being declared insolvent. It is the Court's understanding that the Bank thereupon ceased functioning and its employees were terminated. Although the FDIC apparently took possession of the Bank's assets and records, there is no evidence that the FDIC has control over the Bank's former employees. While the FDIC may be able to obtain relevant information from the Bank's former officers or employees upon request, it does not necessarily have any greater access to or ability to obtain information from them than do the Defendants. Therefore, to the extent that the FDIC is *truly* unable to answer an interrogatory or respond to a request for admission because the information necessary to respond is known only by the Bank's former employees, the FDIC is not obligated to seek them out and obtain the information for Defendants.[1] Notwithstanding this conclusion, the Court finds that the FDIC's discovery responses are deficient and should be supplemented for the reasons set forth hereinafter.

### 1. **Requests for Admission.**

Defendants request that the FDIC admit certain factual propositions regarding the "Loan" or "Note" that the Bank made to Lake Elsinore 521 LLC. *See* Requests for Admissions Nos. 1-3, 12. In response to these requests, the FDIC stated that the Loan Agreement "speaks for itself." The FDIC, however, does not admit or deny the truthfulness of Defendants' description or characterization of the Loan or Note. Nor does the FDIC state that it is unable to admit or deny the requests. Several other requests ask the FDIC to admit factual propositions or opinions about the loan transaction or the value of the foreclosed property. While the FDIC objects to some of these requests on the grounds that they are irrelevant, in many instances, the FDIC responds, without objection, by "admitting" that certain identified documents contain statements consistent with the

---

[1] Defendants could have deposed the Bank's former employees concerning their knowledge about the loan, the value of the subject property or other relevant matters.

propositions that the Defendants ask it to admit. The FDIC then asserts that the identified document(s) "speaks for itself." The FDIC does not, however, admit or deny the truth of the matters set forth in the requests. Nor does the FDIC state that it is unable to admit or deny the requests. *See* Responses to Requests for Admissions Nos. 4-5, 7-8, 19-28, 32, and 33.

In support of its responses, the FDIC relies on *Lakehead Pipe Line Co. v. American Home Assur. Co.*, 177 F.R.D. 454, 457 (D.Minn. 1997). In that case, the defendants sought admissions as to the authenticity of certain documents, and the truthfulness or accuracy of the defendant's interpretation of those documents. The plaintiffs admitted the authenticity of the documents, but objected to defendants' "effort to obtain, by implication, a synoptic characterization of the documents, or a gloss as to their intendment on the ground that the documents speak for themselves." In holding that the plaintiffs' objections and responses were proper, the court stated:

> [W]e recognize that Requests which seek opinions of fact, or of mixed fact and law, are appropriate, since contention Requests were encompassed within Rule 36, by amendment, in 1970. Nevertheless, a document has both context, the writer's intent, and other subjective variables, which cannot be legitimately reduced to matters of fact, of mixed fact and law, or of opinion. Notably, the Plaintiffs' responses to these requests included an admission, or a denial, so that the Defendants were not deprived of a competent response to their Request. Specifically, by the Plaintiffs' Response, the Defendants are on notice that their interpretation of a given document is inconsistent with the Plaintiffs' construction and, if the document is critical to the case, the evidence that would be required to prove the document's meaning. The quintessential function of Requests for Admission is to allow for the narrowing of issues, to permit facilitation in presenting cases to the factfinder and, at a minimum, to provide notification of those facts, or opinions that remain in dispute. This function has been faithfully served by Plaintiffs' responses.

*Lakehead*, 177 F.R.D. at 457-8.

The same cannot be said of the FDIC's responses to Defendants' Requests for Admissions. Defendants' Request Nos. 1, 2, 3 and 12 arguably ask the FDIC to admit to Defendants' characterizations about the purpose or nature of the Loan. The FDIC responds to these requests, without objection, by simply stating that the Loan Agreement speaks for itself. The FDIC, however, does not admit or deny the requests or state that it cannot admit or deny them. Thus, the FDIC's responses to these requests are simply evasive and therefore insufficient.

. . .

In response to Requests Nos. 4-5, 7-8, 19-28, 32, and 33, the FDIC again neither objects, admits, denies or states that it cannot admit or deny the requests. The FDIC refers to various documents that contain language consistent with the requested propositions and states that such documents speak for themselves. These responses are also evasive because they do not fairly respond to the substance of the matters that Defendants request be admitted. The FDIC provides no reason why it cannot admit or deny these requests based on the documents or other information in its possession. Accordingly, the FDIC should (1) admit the requests if it has no reason to dispute their truthfulness and accuracy, (2) deny the requests, in whole or in part, if it has a reasonable basis to dispute the requested matter, or (3) state that it cannot admit or deny the requests and provide reasonable explanations, in adequate detail, as to why it cannot respond. The Court therefore grants Defendants' motion to compel the FDIC to supplement its responses to Requests for Admissions Nos. 1-5, 7-8, 12, 19-28, 32, and 33.

Defendants also move to compel the FDIC to further respond to Requests for Admission Nos. 6 and 9. Request No. 6 asks the FDIC to "[a]dmit that in 2006 the amount of an acquisition and development loan from the bank was based upon a percentage of the fully entitled appraised value of the real property being purchased." In response to this request, "[t]he FDIC admits that the Bank appears to have considered various factors before lending money, including the value of the property meant to secure any amounts loaned." The FDIC also refers to certain documents and states that "these documents speak for themselves." Request No. 9 asks the FDIC to admit that "[f]or Loan approval purposes the Bank used a loan to value ratio that was calculated using the prospective as if complete bulk market value assuming final tract map and Communities Facilities District Approval." In response to this request, the FDIC again "admits that the Bank appears to have considered various factors before lending money, including the value of the property meant to secure any amounts loaned."

While the FDIC's responses to Requests 6 and 9 contain an express admission by the FDIC, they do not fairly respond to the substance of the requests and are therefore evasive. The FDIC does not specifically admit or deny either request, but only vaguely admits that "it appears that the Bank considered various factors before lending money, including the value of the property . . . ." In

responding to Request Nos. 6 and 9, the FDIC should (1) admit the requests if it has no reason to dispute them, (2) deny the requests, in whole or in part, if the FDIC has a reasonable basis to dispute the requested matters, or (3) state that the FDIC cannot admit or deny the request(s) and explain in adequate detail why it cannot do so. The Court therefore grants Defendants' motion to compel the FDIC to supplement its responses to Requests for Admission Nos. 6 and 9.

Defendants seek to compel the FDIC to respond to Request Nos. 16, 17 and 18, which the FDIC states it is without sufficient information to answer. The FDIC, however, reserves its right to supplement its responses at a later date. Request for Admission No. 16 asks the FDIC to admit that Lake Elsinore presented a draw request to the Bank on September 28, 2007 in the sum of $54,462. Request No. 17 asks the FDIC to admit that the Bank knew that Lake Elsinore intended to use the money from the September 28, 2007 draw request to obtain approval from the City of Lake Elsinore of the final tract map and the Communities Facilities District for the Property. Request No. 18 asks the FDIC to admit that the Bank demanded a payment of $300,000 and a second payment of $191,498.365 one week later along with projected interest costs and fees before it would fund Lake Elsinore's September 28, 2007 draw request. The FDIC's responses to these requests do not comply with Rule 36(a)(4). First, they do not contain the required statement that the FDIC has made reasonable inquiry in an attempt to respond to the requests. Second, the FDIC's failure to explain why it cannot admit or deny these requests appears to have no basis. All three requests appear to be based on recorded communications between Lake Elsinore and the Bank concerning fairly specific facts. The Court therefore grants Defendants' motion to compel the FDIC to supplement its responses to Requests for Admission Nos. 16, 17 and 18.

Defendants also move to compel the FDIC to further respond to Requests for Admission Nos. 10 and 11. Request No. 10 asks the FDIC to admit that if the Bank had used the Property's appraised "as is" value at the time of Loan approval, the Bank would have reduced the Loan amount. Request No. 11 asks the FDIC to admit that if the Bank had used the Property's appraised "as is" value at the time of Loan approval to loan $18,400,000, the loan to value ratio would have been more than 100% of the "as is" value of the Property. The FDIC objects to both requests on the grounds that it is unable to definitively respond to a request as to what the Bank would have

done. The FDIC again states that the Bank appeared to consider various factors before lending money, including the value of the property meant to secure any amounts loaned.

The FDIC may have grounds to deny Request No. 10, or at least state that it is unable to admit it, if it has some reason to believe that the Bank would have still loaned Lake Elsinore $18,400,000 notwithstanding that the value of the real property was substantially less than that amount at the time the Loan was made. The Court questions, however, whether there is any basis for such a belief. Request No. 11, however, appears to ask the FDIC to admit a self-evident mathematical proposition: That if the value of the property is less than the amount of the Loan, then the loan to value ratio is greater than 100%. While this request may be unnecessary, it does not require the FDIC to predict or speculate as to what the Bank would have done. The Court therefore grants Defendants' motion to compel the FDIC to supplement its responses to Requests for Admission No. 11. The Court also orders the FDIC to clarify its response to Request No. 10 by either admitting or denying this request, or by explaining in further detail why it cannot admit or deny the request.

Defendants also ask the Court to overrule the FDIC's objections and require it to respond to Request Nos. 13, 14 and 15. These requests ask the FDIC to admit that the Bank granted an oral extension of the due date on the promissory after September 17, 2007 and also orally agreed to fund the last $671,570.83 of the Loan so that Lake Elsinore could obtain approval of the final tract map and the Communities Facilities District. The FDIC has objected to these requests on the grounds that discussions or agreements between Lake Elsinore and the Bank that were not reduced to writing are irrelevant and inadmissible. The FDIC cites 12 U.S.C. §1823 which states that no agreement which tends to diminish or defeat the interest of the FDIC as receiver of any insured institution shall be valid against the FDIC unless the agreement is in writing. Defendants argue that they do not seek to enforce any oral agreement against the FDIC, but argue that these requests are relevant to the issue of the Bank's perception of the value of the secured property. The FDIC counters that evidence regarding the Bank's decision to extend the maturity date of the Loan nine months before the foreclosure sale is irrelevant to the value of the property on the date of foreclosure.

Rule 36(a)(1) incorporates Rule 26(b)(1) which authorizes a party to obtain discovery on any nonprivileged matter that is relevant to a claim or defense in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Under Rule 26(b)(1), relevancy is liberally construed. NRS 40.457.1 requires the court to take evidence concerning the fair market value of property sold as of the date of the foreclosure or the trustee's sale before awarding a deficiency judgment. In *Lee v. Verex Assurance Inc.*, 103 Nev. 515, 518, 746 P.2d 140 (1987), the Nevada Supreme Court held that under this statute, fair market value means "the price which a purchaser, willing but not obligated to pay, would pay an owner willing but not obligated to sell, taking into consideration all uses to which the property is adapted, and might in reason be applied." *See also Unruh v. Streight*, 96 Nev. 684, 615 P.2d 247 (1980). This definition provides the district court with fairly broad discretion in determining the fair market value.[2]

The FDIC may be correct that the Bank's decision to grant an extension on the maturity date of the Loan so that Lake Elsinore could obtain approval of the final tract map and the Communities Facilities District has little or no probative value as to the fair market value of the property on the date of the trustee's sale. Defendant, however, may be able to fashion some credible argument, based on these facts and others, that the April 21, 2008 appraisal report understates the fair market value of the property at the time of sale. The Court does not rule out the possibility for example, that an appraiser for Defendants will testify that the feasibility of obtaining final tract map and the Communities Facilities District up to the date of the foreclosure is a factor that should be considered in determining the value of the property on that date. Requiring the FDIC to respond to these requests does not mean that they will necessarily be admissible at trial or that the fact finder will give them any significant weight. The burden imposed on the FDIC in being required to answer these requests is slight and does not substantially outweigh the potential probative value of the FDIC's admissions to these requests, assuming that it does admit them. The Court therefore

---

[2] The parties have not briefed the issue of whether the calculation of a deficiency judgment in this case is governed by Nevada or California law. For purposes of this motion, the Court assumes that Nevada law governs.

overrules the FDIC's relevance objections to Requests for Admission Nos. 13, 14 and 15 and grants Defendants' motion to compel the FDIC to answer these requests.

### 2. Interrogatories.

The Court agrees with Defendants that to the extent that the FDIC can answer Defendants' interrogatories based on information in the Bank's documents that are in its possession, the FDIC should do so. The Court also agrees that the responding party must make a prompt and diligent effort to investigate and provide fully responsive answers. Rule 26(e) generally requires a party to supplement its disclosures or responses in a timely manner if it learns that they are incomplete or incorrect in some material respect. The 1993 Advisory Committee Notes state that "[s]upplementations . . . should be made at appropriate intervals during the discovery period and with special promptness as the trial date approaches." The right to supplement discovery responses is not an excuse for not responding to discovery requests in a timely and thorough manner.

Defendants' Interrogatory Nos. 5(a) and 6 ask whether the Bank or its employees or agents took certain actions relating to the subject property. Interrogatory No. 9 asks whether the FDIC is aware of any reason that any governmental entity would not approve the final tract map or Communities Facilities District for the Property. In response, the FDIC states, upon information and belief, that it does not believe that the Bank took any such actions and it was not aware of any reason why a government entity would not approve the final tract map or Communities Facilities District for the Property. The FDIC states, however, that it is attempting to locate additional information responsive to the requests and will supplement its answer if such information exits. To the extent that the FDIC has possession of or access to additional information responsive to these interrogatories, it should supplement its answers.

Defendants' Interrogatory No. 5(b) asks the FDIC to describe in detail all negotiations and offers for the purchase or sale of the Property, including the identity of all persons who contacted the Bank, orally or in writing, about purchasing the Property. In response to this Interrogatory subpart, the FDIC states that it was not involved in the creation of the Loan that is the subject of the litigation. On information and belief, however, the FDIC identifies nine former Bank officers or employees who may have knowledge relevant to the interrogatory. Interrogatory No. 7 asks the

FDIC to state all of the reasons why the Bank did not foreclose on the Property until May 16, 2008. Once again, the FDIC's states that it was not involved in the creation of the Loan. The FDIC identifies the same nine former Bank officers or employees who may have knowledge relevant to this interrogatory.

The FDIC's answers to Interrogatory Nos. 5(b) and 7 are non-responsive. The fact that the FDIC was not involved in the creation of the Loan does not necessarily preclude it from providing substantive information responsive to these interrogatories. Negotiations and offers of purchase or sale may have been made in writing. Alternatively, verbal negotiations and offers may have been memorialized in the Bank's records. Likewise, the Bank's reasons for not foreclosing on the property until May 16, 2008 may be documented in records now in the FDIC's possession. The FDIC should therefore answer these interrogatories to the extent it can do so based on information contained in Bank records in its possession. If no such information is contained in the records, or otherwise known to the FDIC, then it should so state. The FDIC is not required to interview former Bank employees for purposes of obtaining information responsive to these interrogatories that is not otherwise known or available to the FDIC.

Defendants' last interrogatory, No. 11, states that if the FDIC's answer to any request for admission is anything other than an unqualified admission, then for each such admission the FDIC is requested to (a) state all of the facts that support its refusal to unqualifiedly admit the request and (b) identify all documents which support the FDIC's refusal to unqualifiedly admit the request. The FDIC objected to this interrogatory on grounds that there are 34 requests for admission and Interrogatory No. 11 constitutes a separate interrogatory as to each request for admission. The FDIC, therefore argues that the total number of interrogatories served by Defendants exceeds the authorized limit of 25 interrogatories. The FDIC further states that it is only required to answer this interrogatory as to fourteen of Defendant's requests for admission. Defendants correctly point out that this assumes that upon providing supplemental responses to requests for admission, the FDIC will not make unqualified admissions to fourteen or more of the requests for admission. The Court therefore orders that upon supplementation of its responses to request for admissions, the FDIC shall also answer Interrogatory No. 11, up through the first 14 requests for admissions that

the FDIC does not unqualifiedly admit.

### 3. Requests for Production.

The FDIC is obligated to produce relevant, nonprivileged documents in its possession, custody or control that are responsive to the Defendants' requests for production. The FDIC does not appear to dispute the assertion that as receiver it is legally entitled to possession of the Bank's records. The Court is unaware whether there are any Bank records which are not already in the actual possession, custody and control of the FDIC.

The Court overrules the FDIC's objection to Request No. 2 which requests production of all appraisals of the property performed at the request of the Bank based on its "General Objections." The "General Objections" are classic "boilerplate" objections. The request clearly appears relevant and the FDIC does not state any specific reason why it is objectionable. Accordingly, the FDIC is ordered to produce all appraisal documents in its possession, custody and control that are responsive to Request No. 2. For similar reasons, the Court overrules the FDIC's objection to Request Nos. 5, 9, 11, and 13. The Court also orders the FDIC to supplement its responses and produce any documents in its possession, custody and control that are responsive to Request Nos. 3 and 6.

Request No. 8 asks the FDIC to produce its experts' complete work files including any professional journals, reports or written information of any kind whatsoever referred to or relied upon by the experts in forming their opinions. The FDIC objected to this request as premature since expert witnesses have not yet been disclosed under the discovery plan and scheduling order. Defendants modify this request in their motion by stating that they are only seeking the work file for the appraisal produced to date. The Court assumes that this refers to the April 21, 2008 appraisal report on which the FDIC relies in regard to the fair market value of the property on the date of the foreclosure sale. With that understanding, the Court orders that the FDIC produce the appraiser's work-file relating to that appraisal report.

Based on the foregoing,

**IT IS HEREBY ORDERED** as follows:

. . .

      1.      Plaintiff FDIC shall provide supplemental responses to Defendants' Request for Admissions Nos. 1-28, and 32-33, in compliance with the foregoing provisions of this order;

      2.      Plaintiff FDIC shall provide answers to Interrogatory Nos. 5, 6, 7, 9 and 11 in compliance with the foregoing provisions of this order; and

      3.      Plaintiff FDIC shall provide supplemental responses to Defendants' Request for Production of Documents Nos. 2, 3, 5, 6, 9, 11 and 13 in compliance with the foregoing provisions of this order.

**IT IS FURTHER ORDERED** that the Plaintiff FDIC shall serve its supplemental discovery responses within 14 days of the filing of this order.

**IT IS FURTHER ORDERED** that the Court finds an award of sanctions is not warranted.

DATED this 21st day of October, 2010.

_____
GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE